### STEWART v. WALTERS.

1. In proceedings under the attachment act, the court may direct the auditor to take the testimony before him on any disputed point, and to send up such testimony with his report, and on the case so made may retry the case, and, superseding the finding of the auditor, render a judgment of its own.

2. It would appear to be competent in such case to direct an issue to be tried by a jury.

Error to Morris Circuit.

This proceeding was by attachment. Before the auditor the claim of the plaintiff was disputed by the creditors, and the same being allowed and a report made accordingly, exceptions were filed to the report, and such proceedings were thereupon

had that the matter was sent back to the auditor with the directions following:

"And that so much of said auditor's report as finds in favor of the plaintiff for the sum mentioned, be and the same is hereby referred back to said auditor, to hear and take such further evidence as either party may have to offer in respect to the existence in law or in fact of the plaintiff's claim herein, and the amount due thereon, and to report with all convenient speed said evidence, and his conclusions as to the validity of the said claim and the amount due thereon; and if neither party shall offer any evidence before him, then that he certify that fact to the court, and return his said report to the court, with a statement of the evidence on which he originally reported in favor of the plaintiff, to the end that the court may take such further proceedings in the case as justice and law may require."

The case was heard by the auditor, under this rule, upon testimony that was stenographically taken down, and again made his return to the court, the second time finding that the plaintiff's claim "was good and valid in law and in fact."

Exceptions being filed to this finding, the matter was heard by the court on the evidence so reported, and the following judgment order was entered: "And the court being now of opinion that the claim presented by the said plaintiff to the said auditor is without foundation in law or fact, and is fraudulent and void as against the applying creditors of the said defendants," &c., it was "thereupon ordered that the said claim be disallowed and struck out of said report, and the original report in all other things be confirmed."

From this finding and order a writ of error was brought.

Argued at June Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE and WOODHULL.

For the plaintiff in error, *A. G. Richey.*

For the defendant, *H. C. Pitney.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The power of the court in an attachment suit over the proceedings before the auditor, is the single question presented in this case for decision. The record before us shows that the court, on the coming in of the auditor's report, retried the case, on the law and the facts, and, setting aside the findings of that officer, entered an independent judgment of its own. It is this exercise of judicial authority that is challenged by this writ of error.

In looking over our reports one is surprised to find so little said with respect to the legal character of the auditors in attachment, and the extent of their authority. And this feeling is certainly not lessened when we find in the statutes themselves so little by way of definition on this subject. The office is held by an ancient tenure, for it existed in provincial times, the provision creating it being much the same as the one which at present is to be found on the statute book. The first permanent legislation on the subject is that which we read in *Allinson's Laws*, *p*. 173, and that act was passed during the time of Governor Belcher, in the year 1748. The pertinent clause of that act is in these words: "And the court before which the same [attachment] is so returned is hereby empowered and required to nominate and appoint three honest and discreet men to audit and adjust the demands of the plaintiff, and of so many of the defendant's creditors as have appeared and applied to the court for that purpose, or to the auditors before they shall have made their report, which said auditors, or any two of them, shall adjust and settle the sum due the plaintiff and to each creditor aforesaid, and make their report in writing, under their hands, to the first or second term thereafter, as the necessity of the case may require."

From this citation it will be noted how very general are the terms instituting this office, for all that is told us on the subject is that the auditor is to audit and adjust the accounts, and to make his report. But suppose an account be disputed, either in point of law or in point of fact, what is to be done then? These officers are not required to be sworn, and no

power is, by actual expression, given them to examine witnesses under oath. Are they to adjudge the law and the facts, and if so, is their decision to be final? If we look at the statutory language alone, it would be difficult to find an answer to these questions. And yet the practice has always been, so far as is known, for these auditors to take jurisdiction in contested cases, and to receive testimony on oath on disputed points. Still, it would seem to be a most violent construction, from the general expression of this act, to draw the conclusion that it was the design to put the most difficult questions of law, as well as the most involved questions of fact, to be decided, by way of final judgment, from which there is no appeal, by a tribunal so illy fitted for such a function. I do not believe that such was the legislative intention, and it seems to me that the statutory omissions on this subject, in the way of description or detail, are explainable. My solution is this: when this original act was passed, and when it directed that "auditors" should be appointed by a court of general jurisdiction, with a duty to "adjust and settle accounts," a reference was thereby made to a class of officers well known to the law, and whose functions were, in a great measure, defined. In the common law usage an auditor was a functionary who was often called in as an assistant to a court; thus, in an action of account, which was a form of remedy once much in vogue, such an officer was employed to ascertain the claims of the respective parties. The older reports are full of cases defining the modes of proceeding before these judicial auxiliaries, and the extent of their functions; and such precedents make it plain that they acted as mere assistants of the court, and were completely under its control and supervision. In this ancient procedure, when there was a judgment *quod computet*, the court assigned auditors to take the account, two officers of the court being usually selected. 1 *Com. Dig., tit. "Accompt,"* 190; 1 *Vin. Abr.* 168. And Lord Coke, in 2 *Inst.* 381, says "that if the auditors do not allow a sum that ought to be allowed, upon complaint to the court, justice ought to be done." From the case of *Crou-*

*sillat* v. *McCall*, 5 *Binn.* 433, it appears it was the usual course to take issues before the auditors upon all matters in discharge of the account, alleged on one side and denied on the other, and which issues being certified · to the court, were decided by the court or a jury respectively, as the issue was one of law or fact; and in this case Chief Justice Tilghman says, " that if the auditors conduct themselves with any manner of impropriety, to the injury of either party, redress may be had on application to the court."

Such was the officer directed to be appointed by this provincial act, in prescribing the methods by which this newly devised remedy by attachment was to be carried into effect. It was not necessary to define, with particularity, the powers of such an officer, because such powers were already defined sufficiently for all practical uses by common practice and frequent decision. It was quite sufficient to call him by his well-known name, and assign to him his equally well-known province. Nor was it necessary to declare that the auditor should be subject to supervision by the court, because that was necessarily, according to established usage, his settled position. It will be observed, likewise, that this hypothesis explains completely the fact that, from the earliest times, there has been no question made with respect to the authority of these officers to take the testimony of witnesses, and to decide upon controverted facts. From the beginning they have exercised, without challenge, the functions of a common law auditor. It is true that formal pleadings, according to the ancient mode in actions of account, have not been filed nor written issues formed, but this was the result of that tendency to simplicity that was early exhibited in the practice of our courts    And this view, that it was the intention to invest this class of officers with the functions of auditors at common law, is decidedly countenanced by what fell from Chief Justice Kirkpatrick in the case of *Berry* v. *Collet,* 1 *Halst.* 179, for in his remarks he says that he was told by his predecessor, Chief Justice Kinsey, " that before the Revolution the Supreme Court not only stayed the proceedings in attachment, but actually

-ordered an issue to try the claim of a creditor, and took the verdict of a jury upon it, and gave the creditor liberty to file a plea in the name of the absconding debtor." And this, it is noticeable, was putting the proceeding very much on the footing of a reference to an auditor at common law. In this case just referred to, it was also held that the court had the competency to order back the case to the auditor for re-examination after report made by him, a doctrine reiterated in *Taylor* v. *Woodward*, 5 *Halst.* 1; *Phœnix Iron Co.* v. *N. J. Iron Co.*, 3 *Dutcher* 484, and *Stewart* v. *Walters*, 9 *Vroom* 274.

This view will fully justify the course that has been taken in the present case. The court had a right to look into the finding of its own officer, and if necessary to retry the questions involved. If deemed necessary, I have no doubt that an issue might have been framed to be tried before the court by a jury.

Let the judgment be affirmed.